**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Trading Technologies International, Inc., | ) |
|                 Plaintiff, | ) Civil Action No. 10-CV-716 |
| v. | ) Judge Rebecca R. Pallmeyer |
| SunGard Data Systems, Inc., SunGard Investment Ventures LLC, and GL Americas, Inc., | ) Magistrate Judge Nan R. Nolan |
|                 Defendants. | ) |

**TRADING TECHNOLOGIES'S OPPOSITION TO GL TRADE AMERICAS'S
MOTION TO DISQUALIFY STEVEN BORSAND AS TRIAL ATTORNEY**

**INTRODUCTION**

GL seeks to disqualify TT's lead litigation counsel, Steven Borsand, on two separate bases. Neither basis has any merit. First, GL alleges that Mr. Borsand must have received confidential information from GL's former "searcher," U.K. patent law firm EIP, and in particular from an EIP partner named Jerome Spaargaren. However, it is indisputable that Mr. Borsand has never been in a position to receive GL confidential information from the EIP law firm, let alone received such information. Mr. Borsand has had no substantive discussions with anyone at EIP, and nobody at EIP has ever done any work for TT on anything related to the subject matter for which GL alleges Mr. Spaargaren assisted it in the past. Therefore, even if GL's unsubstantiated assertions that it provided some confidential information to EIP were true and it had a relationship with EIP until 2008, GL's motion fails. However, GL has not even established that it provided EIP with confidential information. GL's allegations are made without any evidentiary support and are contradicted by the EIP firm, which has stated that its work for Alston & Bird – not GL directly – was very limited, ending in 2006, and that EIP received no GL confidential information as part of that work. This is not surprising because based on GL's allegations it appears that the work was a prior art search, which typically does not require access to confidential information. In any event, EIP has never provided any GL confidential information to Mr. Borsand or anyone else associated with TT.

Second, GL requests disqualification by alleging that Mr. Borsand will be a witness at trial. At best, GL's motion on this point is premature. Whether Mr. Borsand's role at trial should be limited in any way should be addressed only after there is a determination that he will be a witness (which is highly unlikely) and after assessing the nature of any testimony. As a result, GL's motion should be denied.

1

**FACTUAL BACKGROUND**

One portion of GL's motion arises out of TT's recent hiring of a foreign attorney and his law firm to assist solely with TT's foreign patent prosecution efforts. Jerome Spaargaren is a U.K. patent attorney at EIP, a London-based intellectual property law firm. He is "frequently engaged by clients for his expertise in patent drafting and strategic patent prosecution." (Ex. A, EIP Website.) He has never been counsel of record for TT in this case, and will not be. In fact, he has never had any role whatsoever for TT in this case, and will not have any role.

TT learned of Mr. Spaargaren and his expertise after outside counsel at MBHB met him at a law firm-hosted World Cup party in London in June 2010.[1] (Ex. B, Triplett Decl. ¶ 5; Ex. C, Sigmond Decl. ¶ 4.) TT has a large patent portfolio that includes many pending patent applications around the world, most of which have no relation to any of the patents-in-suit. (Ex. B at ¶ 6.) Accordingly, TT has a need for competent patent counsel throughout the world, including in the U.K. and Europe generally. *Id*. Before he was even asked to talk to TT, Mr. Spaargaren was asked to perform a conflict check. (Ex. C at at ¶ 5.) After that check showed no conflict with prosecuting TT's patent portfolio and based on a positive reference regarding Mr. Spaargaren and EIP, TT's Vice President of Patents, Mark Triplett, then had a telephone conference with Mr. Spaargaren and his partner, Heather McCann, in which Mr. Borsand and outside counsel at MBHB, Leif Sigmond, Jr. joined. (Ex. B at ¶ 7; Ex. C at ¶ 7; Ex. D, Borsand Decl. ¶ 17.) That call was one of only two discussions Mr. Borsand has ever had with EIP. (Ex. D at ¶ 17.) Mr. Spaargaren again indicated that EIP would have no conflicts of interest in

---

[1] GL's counsel said at the presentment of its motion, "But we do know – and I am not suggesting that it was – appeared in our privilege log and they then went ahead and tried to interfere. No, that is not what I want to suggest." (Ex. E, 10/13/10 Hr'g Tr., at 32.) It is a good thing that GL was not trying to suggest that TT found Mr. Spaargaren's name on GL's privilege log because Mr. Spaargaren's name does not appear on GL's privilege log. Nor did Mr. Spaargaren's name appear in GL's initial disclosures or document production in the 2005 or 2010 cases. In fact, GL did not disclose to TT that its counsel ever had a relationship with Mr. Spaargaren or EIP until after GL found out that TT had retained EIP.

2

prosecuting European patent applications for TT and provided more information about EIP's patent prosecution capabilities and practice. (Ex. B at ¶ 7; Ex C at ¶ 7; Ex. D at ¶ 17.) He did not discuss anything confidential or any work for particular clients and did not mention any previous relationship with Alston & Bird or GL. (Ex. B at ¶ 7; Ex. C at ¶ 8; Ex. D at ¶ 17.) Mr. Triplett then sought out other references (from both a U.K.-based law firm and a domestic client of EIP) regarding EIP's European patent prosecution abilities before making any decision to retain EIP. (Ex. B at ¶ 8.)

On August 1, 2010, Mr. Triplett decided to hire EIP to assist TT with its European patent prosecution. (Ex. B at ¶ 9.) Consistent with his role at TT, Mr. Triplett made the decision himself, after consulting with his subordinates. (Ex. B at ¶ 9; Ex. D at ¶ 14.) That is because, as part of their job duties, Mr. Triplett and his group – not Mr. Borsand – handle substantive discussions and day-to-day interactions with patent prosecution counsel. (Ex. B at ¶ 10.) Neither Mr. Triplett nor Mr. Borsand had any knowledge of a prior relationship between EIP and Alston or GL at that time. (Ex. B at ¶ 9; Ex. D at ¶ 21.)

On August 9, 2010, Mr. Triplett instructed the Venner Shipley firm (another U.K. patent law firm that had been prosecuting TT's European applications) to transfer TT's European patent files to EIP. (Ex. B at ¶ 11.) Mr. Triplett was informed that the transfer was not completed until the end of August 2010. *Id.* At Mr. Triplett's request, Mr. Borsand executed a power of attorney on August 13, 2010 transferring to EIP responsibility for prosecution of certain European patent applications because Mr. Borsand executes all patent-related powers of attorney for TT. (Ex. B at ¶ 11; Ex. D at ¶ 16.) The power of attorney was filed on or around August 19, 2010. (Ex. B at ¶ 11; Ex. D at ¶ 16.)

Other than the initial phone call, Mr. Borsand had no further contact with Mr. Spaargaren

3

or EIP until after GL's counsel, Phillipe Bennett of Alston & Bird, remarked that TT had hired Alston & Bird's "searcher" during a conversation in the courthouse after a September 13, 2010 hearing. (Ex. E at 6.) Two days later, on September 15, 2010, Mr. Bennett sent a letter to Mr. Borsand claiming that "[s]ince late 2005, Defendants have had a continuing consulting relationship with EIP Partnership LLP ("EIP") and Mr. Jerome Spaargaren." (Ex. F, 9/15/10 Letter from Bennett to Borsand.) GL has since backed away from this assertion, now admitting that Alston had no contact with anyone at EIP after June 2008 (as noted below, EIP says the project ended much earlier). (Ex. G, 10/18/10 Letter from Moss to Borsand, at 2.) Nonetheless, Mr. Bennett demanded that TT immediately terminate its relationship with Mr. Spaargaren and EIP and that Mr. Borsand immediately withdraw from representation of TT as trial counsel.[2] (Ex. F, at 1.)

One day after Mr. Bennett's letter to Mr. Borsand, another of GL's attorneys, Lora Moffatt of Salans, sent a letter to Mr. Spaargaren. Apparently,[3] Ms. Moffatt's letter accused Mr. Spaargaren and EIP of "a flagrant breach of numerous rules and regulations governing patent attorney conduct" and "a willful disregard of ethics rules and codes of conduct." (Ex. G, at 1). Mr. Spaargaren sought to discuss his concerns about Ms. Moffatt's letter with Mr. Triplett, and Mr. Borsand and Mr. Triplett promptly contacted EIP to inquire into any potential conflict EIP may have. (Ex. B at ¶ 12; Ex. D at ¶ 17). EIP's representatives reaffirmed to Mr. Triplett and

---

[2] Mr. Borsand responded to Mr. Bennett's letter on September 17, 2010 and refuted the allegations. (Ex. H, 9/15/10 Letter from Borsand to Bennett). Mr. Borsand advised Mr. Bennett that EIP had yet to do any work on matters relating to the '132 and '304 patents and that, out of an abundance of caution, TT was not going to use EIP to assist in patent prosecution of counterparts to the '132 and '304 patents at least until Mr. Bennett's allegations were resolved. Mr. Borsand also asked Mr. Bennett provide evidence that EIP's statements were incorrect so that TT could assess whether such a restriction was necessary. Mr. Borsand reiterated these facts in an October 8 email to Mr. Bennett responding to a September 24 letter from Mr. Bennett, again including threats. (Ex. I, 10/8/10 Email from Borsand to Bennett).

[3] Ms. Moffatt did not copy TT's counsel on her letter to EIP, and GL has refused to provide a copy to TT. In light of Ms. Moffatt's accusations, EIP has also refused to provide a copy of the letter to TT.

4

Mr. Borsand that EIP had no conflicts of interest in prosecuting European patent applications for TT and denied that it had any ongoing relationship with GL, Alston & Bird, or any other law firm representing GL. *Id*. Rather, EIP's representatives said that they had done a single project for Alston & Bird that had concluded in 2006, that Alston & Bird never identified the real-party-in-interest (apparently GL) for the project, and that EIP never received any confidential information from Alston & Bird or anyone else in relation to the project. (Ex. B at ¶ 12; Ex. D at ¶ 17.). Mr. Borsand has had no further contact with anyone at EIP since that time. (Ex. D at ¶ 17.)

Between the time TT retained EIP and September 16, EIP provided no legal advice to TT on any matter. (Ex. B at ¶ 14; Ex. D at ¶ 18.) TT had only recently retained EIP, and EIP had not received TT's patent files until the end of August. (Ex. B at ¶ 11.) Coincidentally, a conference call had been scheduled for September 16, 2010 in which Mr. Triplett and his team (not Mr. Borsand) were to discuss TT's matters for the first time with EIP; that call was cancelled and, instead, Mr. Triplett and Mr. Borsand discussed Alston & Bird's allegations with EIP. (Ex. B at ¶ 14.)

Out of an abundance of caution, Mr. Triplett instructed EIP not to provide to TT any advice relating to the patents that Alston & Bird has claimed EIP assisted it with, or any European counterparts of those patents. (Ex. B at ¶ 15; Ex. D at ¶ 19.) On September 27, 2010, EIP accordingly withdrew its representation of TT from the two patent applications and European Opposition related to the '132 and/or '304 patents. (Ex. B at ¶ 15; Ex. G, at 3.) Those files, on which EIP never even began work, have been returned to the Venner Shipley firm. (Ex. B at ¶ 15.) EIP never provided TT with any advice on these matters.

On September 27, 2010, Gary Moss of McDermott Will & Emery, counsel for Mr.

5

Spaargaren and EIP, apparently[4] responded to the accusations in Ms. Moffatt's September 15, 2010 letter. (Ex. G, at 1.) In a four and a half page letter, Mr. Moss provided a detailed refutation of GL's allegations. *Id.* While maintaining the confidentiality of any information EIP provided to Alston & Bird, Mr. Moss noted specifically the inaccuracy of GL's assertion that "[f]rom at least December 2005 through June 2008 GL's outside counsel, Mr. Spaargaren and EIP have been in direct communication concerning issues of work product relating to certain of Defendant's defenses to TT's patents" because such an allegation "does not appear to accord with the recollection of Mr. Spaargaren or EIP's file records." (Ex. G, at 2.)

TT contacted EIP's attorney, Mr. Moss, and requested that Mr. Spaargaren prepare a declaration to address these inconsistencies. TT was initially advised that Mr. Spaargaren was willing to provide such a declaration. However, in the interim, the London office of Salans (Ms. Moffatt's law firm) apparently[5] sent another threatening letter to EIP. (Ex. J, 10/29/10 Letter from Moss to Borsand, at 1.) On October 29, 2010, Mr. Moss advised TT that Mr. Spaargaren did not feel able to accommodate TT's request, given that he had received further threats from GL, including "an intention to refer [EIP] to the Intellectual Property Regulation Board, which is the relevant regulatory body for patent and trademark attorneys in the United Kingdom" based upon EIP "involving themselves" in this case. *Id*. at 2. TT wrote to GL's counsel and requested that GL immediately reconsider its position that Mr. Spaargaren may have no contact with TT. (Ex. K, 10/29/10 Letter from MBHB to Bennett.) To date, GL has not responded to TT's request.

GL has also filed a separate motion for entry of a protective order that would essentially

---

[4] Mr. Moss has suggested that TT seek to obtain a copy of his September 27, 2010 letter from Ms. Moffatt. As with Ms. Moffatt's September 15, 2010 letter, Ms. Moffatt and GL have refused to provide a copy of Mr. Moss's response.

[5] Salans again did not copy TT's counsel on its letter to EIP, and GL has refused to provide a copy to TT.

disqualify Mr. Borsand from actively participating in the litigations by denying him access to HIGHLY CONFIDENTIAL materials under the Protective Order. 10-716 Dkt. 53. To support that motion, GL relies on many of the same unsupported factual allegations. In response to this motion, TT sets forth in great detail Mr. Borsand's role as lead litigation counsel and his minimal involvement in patent prosecution. In summary, Mr. Borsand is TT's lead litigation counsel, who only has high level oversight over patent prosecution at TT. (Ex. D at ¶ 7.) Mr. Borsand's primary job responsibility at TT is to manage and direct TT's patent litigation efforts, which includes, for example, representing TT at hearings, drafting and revising briefs, and attending depositions. *Id.* at ¶ 5. By contrast, since mid-2004, Mr. Borsand's role in prosecution has been minimal. *Id.* at ¶ 7. Instead, Mr. Triplett and four other patent attorneys who report to him are responsible for TT's patent prosecution, including dealing with foreign patent prosecution counsel. *Id.* Mr. Borsand is not involved in these day-to-day communications. *Id.* at ¶ 7-8.

**ARGUMENT**

In seeking to disqualify Mr. Borsand from this case, even as only a trial attorney, GL faces a heavy burden of proof that it has done nothing to surmount. The reason for the heavy burden is that motions to disqualify are "viewed with extreme caution for they can be misused as techniques of harassment." *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 722 (7th Cir. 1982). Additionally, disqualification is a "drastic measure which courts should hesitate to impose except when absolutely necessary." *Schiessle v. Stephens*, 717 F.2d 417, 420 (7th Cir. 1983). Here, GL has provided ***no evidence*** that could allay the Court's caution or suggest the imposition of such a drastic measure. *See* Ex. J, *Simons v. Freeport Mem'l. Hosp.*, No. 06 C 50134, 2008 WL 5111157 (N.D. Ill. Dec. 4, 2008) (denying motion to disqualify due to failure to present evidence). The reason is that none exists: Mr. Borsand has received no GL confidential

7

information, had no opportunity to do so, and there is no issue on which Mr. Borsand currently appears to be a likely witness. GL's motion should therefore be denied.

GL fails to cite even a single analogous case in which counsel has been disqualified. Instead, the cases cited by GL involve different facts, including 1) litigation counsel switching sides, 2) litigation counsel retaining a testifying expert witness known to have been working for the other side in the same litigation and known to have received confidential information from the opposing party, 3) litigation counsel improperly obtaining confidential information from opposing party's employee, 4) litigation counsel engaging in a clear violation of some other ethical rule. None of those scenarios exist here.

Further, GL mischaracterizes the caselaw on which it relies, omitting key factual differences. *See, e.g., Sisk v. Transylvania Cmty. Hosp., Inc.*, 695 S.E.2d 429, 432 (N.C. 2010) (revoking plaintiff's counsel's *pro hac vice* status after counsel made *ex parte* contact with defendant's expert witness <u>and</u> convinced expert to switch sides); *Cordy v. Sherwin-Williams Co.*, 156 F.R.D. 575, (D.N.J. 1994) (disqualifying counsel after retaining expert witness it <u>knew</u> had been previously retained by plaintiff in same case and <u>knew</u> had rendered oral opinion to plaintiff's counsel based on confidential work product); *Shadow Traffic Network v. Superior Court. of Los Angeles County.*, 24 Cal. App. 4th 1067, 1072-73 (Cal. Ct. App. 1994) (disqualifying defendant's counsel for retaining expert witness who it <u>knew</u> had received confidential work product from plaintiff's counsel);[6] *County. of Los Angeles v. Superior Court. of Los Angeles County.*, 222 Cal. App. 3d 647, 652 (Cal. Ct. App. 1990) (disqualifying plaintiff's

---

[6] Notably, the *Shadow Traffic* court indicated that one "way to rebut the presumption that confidential information has been disclosed is to show that the newly hired person will have no connection with any litigation in which the confidential information could be used." 24 Cal. App. 4th at 1087 n.13. That is the situation here – Mr. Spaargaren and EIP will have no role in this litigation and will not work for TT on related subject matter until GL's allegations are resolved. If the Court believes TT should not use EIP's services on any matter, TT would be willing to disengage completely from EIP.

counsel after contacting defendant's expert witness, <u>incorrectly convincing him that he was "now at liberty to be engaged" by plaintiff, and discussing report he had prepared for defendant</u>).

A more instructive case is *Space Systems/Loral v. Martin Marietta Corp.*, No. 95-20122 SW, 1995 WL 686369 (N.D. Cal. Nov. 15, 1995) (Ex. L). There, the plaintiff's in-house counsel retained two independent experts who were ex-employees of a predecessor of the defendant to assist the plaintiff in determining whether patent infringement had occurred. *Id.* at *1. The defendant sought the disqualification of both experts, outside counsel, and in-house counsel. *Id.* at *2. One of the experts was disqualified, but the court refused to disqualify either outside or in-house counsel because the defendant failed to show that the "[the experts] have disclosed or are likely to disclose any confidential information to [plaintiff's] attorneys from which a taint can be imputed. [Defendant] offers only unsubstantiated speculation that there is some risk of confidential disclosure. . . ." Further, the Court distinguished the cases relied upon by Defendant, noting they

> involve experts who were privy to an adversary's work product or attorney-client privileged information, *not merely confidential factual material* obtained outside the context of the litigation. The concerns raised by the disclosure of litigation-related, privileged information are naturally great, since the integrity of the adversary system could easily be undermined. In contrast, disclosure of independently obtained, factual information which is subject to discovery anyway does not raise the same level of concern.

*Id.* at *5 (citations omitted) (emphasis added). Here, the facts are not even analogous to *Space Systems* as TT has not retained a former GL expert and Mr. Borsand does not even deal with the EIP firm on patent prosecution matters.

### A. Mr. Borsand Has Never Received GL Confidential Information or Been In a Position to Receive GL Confidential Information

It is indisputable that Mr. Borsand has never had any substantive contacts with anyone at the EIP law firm, and therefore no GL confidential information could have passed to him. Mr.

9

Borsand's only conversations with EIP were via telephone and involved 1) an initial pitch regarding EIP's capabilities in which EIP also advised TT that it had cleared a conflicts check, and 2) a discussion regarding whether EIP was still confident that it had no conflicts, which occurred *after* GL made its allegations. (Ex. D at ¶ 17.) No confidential information was provided to TT in either of these contacts. (Ex. B at ¶¶ 7, 16; Ex. D at ¶ 22.) Mr. Borsand's limited contacts with EIP is indicative of his minimal and high level involvement, if at all, in TT's patent prosecution.

It is also indisputable that EIP has never provided any legal advice to TT relating to the subject matter of the prior work that EIP apparently did for Alston & Bird (prior art searching relating to the '132 and '304 patents). Indeed, immediately after EIP received Ms. Moffatt's letter, TT instructed EIP to not work on any counterpart applications to the '132 and '304 patents and to transfer those files to another firm. (Ex. B at ¶ 15.) EIP had not provided TT any advice on those matters and has not since. (Ex. B at ¶¶ 14, 15; Ex. D at ¶ 18.)

Thus, even if one were to accept GL's unsupported allegations that it provided confidential information to EIP pursuant to a ongoing relationship relating to the '132 and '304 patents, GL's motion fails because the uncontroverted evidence shows that Mr. Borsand did not receive any such confidential information. *See Simons*, 2008 WL 5111157, at \*7 ("[u]ncontroverted affidavits are sufficient rebuttal evidence.") Furthermore, there is no risk that Mr. Borsand will receive any GL confidential information from EIP in the future because he does not interact with EIP..

Tellingly, GL has refused to produce any declarations or documents to support its allegations, or even a privilege log that would provide basic facts regarding the scope and nature of its alleged relationship with EIP. Further, the record makes clear that EIP disputes GL's

10

factual allegations, stating, for example, that it did not receive confidential information from Alston & Bird. (Ex. B at ¶ 12; Ex. D at ¶ 17.) GL fails to apprise the Court of these facts as well, including that EIP did not even know that its work for Alston & Bird was on behalf of GL, let alone that EIP did not receive confidential information or attorney work product. *Id*. Instead, EIP was apparently retained as a prior art "searcher," independently seeking factual information regarding prior art that would be subject to discovery anyway. That is, there is no evidence that any work product or privileged information flowed from Alston & Bird to EIP, only that EIP provided factual information to Alston & Bird. The only evidence before the Court points to the contrary. As GL has the burden of proof, its motion fails on this basis as well. *Week v. Samsung Heavy Indus. Co., Ltd.*, 909 F. Supp. 582, 583 (N.D. Ill. 1996). At a minimum, if this Court was willing to overlook GL's failure to provide evidence supporting its motion and accept evidence in reply (which it should not), TT should be entitled to all of the evidence on the issue, including all non-privileged information after an *in camera* review, a privilege log, and a declaration from Mr. Spaargaren.

At a more fundamental level, however, GL's motion raises extremely troubling concerns because GL is seeking Mr. Borsand's disqualification although TT did everything the right way and GL has not. GL failed to disclose to this Court that it had received a detailed, four and a half page refutation of its allegations by EIP's attorney. While GL relies on the power of attorney filed in late August, GL fails to advise the Court that EIP withdrew from any representation in the foreign counterpart cases to the '132 and '304 patents – despite the withdrawal being filed before GL filed its motion and despite Mr. Borsand telling GL's counsel as much in his September 17 and October 8 communications. (Ex. H; Ex. I.)

By contrast, TT found and hired Mr. Spaargaren through positive third-party references

11

and was told there were no conflicts. It did not and could not have learned of any relationship between GL and Mr. Spaargaren because GL went out of its way to not disclose any such relationship to either Mr. Spaargaren or TT. GL worked through Alston & Bird as an intermediary, Alston & Bird did not inform Mr. Spaargaren who its client was, and GL kept Mr. Spaargaren's and EIP's name out of its production, off of its privilege log, and beyond its discovery responses. But GL nonetheless immediately demanded that Mr. Borsand withdraw from his representation of TT in this case as soon as it discovered TT had hired EIP for European patent prosecution. GL has further accused Mr. Borsand of improper conduct for merely seeking to investigate the veracity of its original allegations – allegations that even GL now has admitted are not completely true. (*Compare* Ex. F to 10-cv-716 Dkt. 75, p. 4 to Ex. G.) And GL has attempted in ethically dubious ways[7] to prevent any inquiry into the veracity of its allegations (which have never been supported by any evidence) – demanding that EIP attorneys not speak to TT's counsel on any matter, demanding that TT immediately cease all contact with EIP, and insisting to the Court that "[t]here can be no contact with the EIP." (Ex. J; Ex. F; Ex. E at 35.) This Court should not countenance GL's attempt to disqualify Mr. Borsand by strong arming EIP and stifling any inquiry, especially when Mr. Borsand acted ethically and properly at every turn.

### B. GL's Argument that Mr. Borsand Will Be a Witness at Trial is at Best Premature

---

[7] Local Rule 83.53.4(3) provides that a lawyer shall not:

> [R]equest a person other than a client to refrain from voluntarily giving relevant information to another party unless:
> (A) the person is a relative or an employee or other agent of a client, and
> (B) the lawyer reasonably believes that the person's interests will not be adversely affected by refraining from giving such information.

EIP attorneys are not relatives, employees, or current agents of GL, and their interests are certainly adversely affected by not being able to defend themselves against allegations of ethical breaches that they have strongly denied. (Ex. G.)

GL's other argument is that Mr. Borsand will "likely be a witness in this and the co-pending actions." (10-cv-716 Dkt. at 12.) However, GL presents just conjecture and speculation that Mr. Borsand will testify at trial, let alone as a witness adverse to TT. There has been no determination regarding which issues will be presented in this case, let alone which issues will be presented at trial. The topics on which GL speculates Mr. Borsand might testify are generally the types of topics reserved for expert witnesses or likely never to arise. Thus, this Court should deny GL's motion as premature.

GL first argues that Mr. Borsand will somehow be a trial witness due to his role in the prosecution of the patents-in-suit, but GL has not even pled the issues it claims he will testify on. GL argues that he will testify on alleged prior use, lack of disclosure of alleged prior use, and alleged lack of written description, but there is no indication that those issues will even be part of this case, let alone any jury trial.[8] Notably, GL does not cite any evidence whatsoever that would support a finding that Mr. Borsand is likely to testify on those issues.[9] That is unsurprising because Mr. Borsand is quite *unlikely* to testify on those issues, as testimony regarding technical topics such as compliance with the written description requirement or prior use are normally the province of expert witnesses. *See* Fed. R. Evid. 702. In any event, these issues are likely issues to be tried before a judge, not a jury, and thus no basis would exist to exclude him as trial

---

[8] To the extent GL suggests Mr. Borsand will be a witness at an inequitable conduct hearing based on failure to disclose prior use, the argument fails because in the related *TT v. eSpeed* litigation, a 2-day trial on inequitable conduct was held in which Mr. Borsand was never a witness. The Federal Circuit affirmed the lower court's ruling that "TT did not engage in inequitable conduct by not disclosing Brumfield's custom software to the PTO because the software was not material to patentability." *Trading Techs. Int'l,Inc. v. eSpeed, Inc.*, 595 F.3d 1340, 1362 (Fed. Cir. 2010). In any event, inequitable conduct is a matter handled by the Court, not a jury.

[9] GL states that the allegation that "Mr. Borsand has relevant knowledge of prior use" is "evident from the *eSpeed* trial." (10-cv-716 Dkt. 75 at.13.) That conclusion is not evident at all from the *eSpeed* trial, especially because (as GL admits) Mr. Borsand did not testify on that issue in the *eSpeed* trial; Mr. Borsand testified only on uncontested formalities.

13

attorney under such a scenario. Thus, GL's assertion that Mr. Borsand will testify on those issues is not based on any defense currently at issue in this case, unsupported by any evidence whatsoever, and in direct conflict with the Federal Rules of Evidence.

Similarly, Mr. Borsand's status as a co-inventor of a group of patents not at issue here should not disqualify him as trial counsel. This issue is dealt with extensively the responses to GL's protective order motion. Mr. Borsand is a named inventor on a family of three patents and six patent applications. Those patents are not the ones that have been asserted against GL in any case; in fact, the patents on which Mr. Borsand is a named inventor have never been asserted against any other party or incorporated into any TT product. (Ex. D, at ¶ 11.) GL does not argue, and provides no evidence, that Mr. Borsand has first-hand information regarding the invention of the subject matter claimed in the patents-in-suit. Rather, like the other technical information they inaccurately suggest that Mr. Borsand might provide at trial, GL speculates that Mr. Borsand has "relevant" knowledge that will somehow be prejudicial to TT. (10-cv-716 Dkt. 75, at 14.) That certainly fails to meet the highly specific showing of necessary testimony and prejudice required for disqualification. Indeed, even in a case where trial counsel was one of the named inventors on the very patent asserted in litigation, a motion to disqualify him as trial counsel was denied when only general concerns were raised. *Voter Verified, Inc. v. Premier Election Solutions, Inc.*, Nos. 6:09-cv-1968-Orl-19KRS, 6:09-cv-1969-Orl-19KRS, 2010 WL 2243708, at *2 (M.D. Fla. June 4, 2010) (Ex. L); *see also* Ex. L, *Tokh v. Water Tower Court Homeowners Ass'n*, No. 06 C 0489, 2006 WL 1648442, at *4 (N.D. Ill. June 12, 2006). Specific evidence, specific indication of the subject matter of testimony, and specific indication of prejudice are required to support a motion disqualify; if any of the three is lacking, the motion should be denied. *See Voter Verified*, 2010 WL 2243708, at *2 (denying motion to disqualify

despite citation to excerpts of deposition testimony). Because all three are missing here, GL's motion to disqualify should be denied.

If the motion is not denied outright, the motion should be denied as premature. *See*, *e.g.*, *Pharmerica Chicago, Inc. v. Meisels*, No. 10 C 02741, 2010 WL 3926211, at *2 (N.D. Ill. Oct. 5, 2010) (Nolan, M.J.) (Ex. L); *Mercury Vapor Processing Techs., Inc. v. Vill. Of Riverdale*, 545 F. Supp. 2d 783, 789 (N.D. Ill. 2008). As Magistrate Judge Nolan indicated only weeks ago, a motion to disqualify trial counsel before it is clear whether and how that counsel may be a witness should be denied as premature, even in a situation with a strong potential for conflict:

> [T]he Court finds it premature to take the "drastic measure" of disqualifying Fultz at this stage of the litigation. First, while Fultz could be prohibited from acting as an advocate at trial or in an evidentiary hearing, he is not prohibited from handling other phases of the litigation. … Furthermore, it is not clear at this point whether Fultz's testimony will be contested or crucial to the case. Even if Fultz's testimony is contested, it may be resolved at summary judgment through affidavits. In sum, "[i]t is entirely conjectural what claims, if any, will proceed to trial, let alone whether [Fultz] will be called as a witness."

*Pharmerica*, 2010 WL 3926211, at *2 (citations and parentheticals omitted); *see also Mercury Vapor Processing*, 545 F. Supp. 2d at 789. As in *Pharmerica*, there is no indication as to what claims will proceed to trial, let alone that Mr. Borsand will be called as a witness by any party. Accordingly, the Court should deny the motion.

## CONCLUSION

GL's motion to disqualify Steven Borsand as trial counsel should be denied because it is unsupported by any relevant evidence whatsoever. Instead, the unrebutted (and unrebuttable) facts set forth in the declarations attached hereto make it clear that GL's motion is without merit. Thus, this Court should deny GL's attempt to gain a litigation advantage by denying TT the services of its lead litigation counsel based on inaccurate factual representations and attempts to suppress contrary truthful testimony.

Date: November 3, 2010

Respectfully submitted,

By: s/ Alan W. Krantz
Leif R. Sigmond, Jr. (ID No. 6204980)
(sigmond@mbhb.com)
Matthew J. Sampson (ID No. 6207606)
(sampson@mbhb.com)
S. Richard Carden (ID No. 6269504)
(carden@mbhb.com)
Jennifer M. Kurcz (ID No. 6279893)
(kurcz@mbhb.com)
Kirsten L. Thomson (ID No. 6293943)
(thomson@mbhb.com)
Alan W. Krantz (ID No. 6296984)
(krantz@mbhb.com)
**McDonnell Boehnen Hulbert & Berghoff LLP**
300 South Wacker Drive
Chicago, Illinois 60606
Tel.: (312) 913-0001
Fax: (312) 913-0002

Steven F. Borsand (ID No. 6206597)
**Trading Technologies International, Inc**.
222 South Riverside
Suite 1100
Chicago, IL 60606
Tel: (312) 476-1000
Fax: (312) 476-1182

**Attorneys for Plaintiff
TRADING TECHNOLOGIES
INTERNATIONAL, INC.**

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing OPPOSITION TO GL TRADE AMERICAS'S MOTION TO DISQUALIFY STEVEN BORSAND AS TRIAL ATTORNEY was served on November 3, 2010 as follows:

*Via Overnight Mail:*

**Lora A. Moffatt**
Salans
Rockefeller Center
620 Fifth Ave.
New York, NY 10020-2457
212-632-8436
lmoffatt@salans.com

*Via Filing with this Court's CM-ECF System, which caused a copy to be served on all registered users:*

**Lora A. Moffatt**
lmoffatt@salans.com

**Philippe Bennett**
Alston & Bird
90 Park Avenue
New York, NY 10016
(212) 210-9400
pbennett@alston.com

**Anthony B. Ullman**
Salans
Rockefeller Center
620 Fifth Ave.
New York, NY 10020-2457
(212) 632-8342
aullman@salans.com

**Brian W. Norkett**
Law Offices of Brian W. Norkett
200 North LaSalle Street #2500
Chicago, IL 60601
(312) 831-1000
bnorkett@bullarocarton.com

**Scott R. Sinson**
Bullaro & Carton, P.C.
200 N. LaSalle St.
Suite 2500
Chicago, IL 60601
(312) 831-1000
ssinson@bullarocarton.com

      /s     Alan W. Krantz